# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                     CR 19-1374 KG

BENJAMIN SANCHEZ-PORRAS,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant Benjamin Sanchez-Porras's "Motion to Dismiss the Indictment" ("Motion"). ECF 23.[1] The Motion is fully briefed. *See* ECFs 26 (United States' Response), 32 (Defendant's Reply). After holding an evidentiary hearing and reviewing the parties' briefing and attached exhibits as well as relevant case law, the Court recommends for the following reasons that the Motion be denied.

## I.   BACKGROUND

The United States charged Sanchez-Porras with illegal reentry under 8 U.S.C. §§ 1326(a) and (b). *See* ECF 12. In the Motion, Defendant mounts an attack on the underlying deportation order, which forms the foundation for the instant charge. The indictment must be dismissed, Defendant submits, because he can establish that the underlying deportation order—the validity of which is an essential element of the indictment—was unlawful. Defendant maintains that the immigration court proceeding that resulted in his removal from the United States was "fundamentally unfair" because it was based on deficient legal representation that not only "improperly deprived [him] of the opportunity for judicial review," but also precluded him from exhausting his administrative remedies. Mot. 1-4 (relying on § 1326(d)(1)-(3)). Consequently, he

---

[1] In accordance with 28 U.S.C. §§ 636(b)(1)(B) and (b)(3), the presiding judge referred this Motion to the undersigned to conduct hearings if necessary and recommend an ultimate disposition. *See* Order of Reference, ECF 29.

asserts that he may permissibly "challenge the validity of the deportation order" on which the indictment was based. *Id*. at 3 (quoting § 1326(d)).

Defendant specifically claims that his retained counsel during the 1999 removal proceeding failed to uncover that the underlying felony offense of "possession of marijuana with intent to distribute"—which provided the basis for his deportation—was *not* the offense of which Defendant had been convicted. Instead, in exchange for Defendant's guilty plea to a state drug tax stamp felony, the marijuana distribution charge had been dismissed. Defendant now complains that his immigration counsel erroneously advised him to admit to having committed that previously-dismissed offense, concede removal, and waive his right to appeal. Defendant contends that, but for the ineffective assistance he received from his retained immigration counsel, he would not have admitted to having committed the dismissed charge and the outcome of the immigration proceeding would have been different.

The United States responds that Defendant cannot carry his burden to establish the elements of § 1326(d), even assuming that Defendant's counsel provided ineffective assistance at the removal proceeding. The United States further emphasizes that, among other things, Defendant failed to exhaust his administrative remedies as required by § 1326(d)(1) because he knowingly waived his right to appeal and, irrespective of counsel's deficiencies, failed to pursue available administrative relief. The United States also asserts that Defendant failed to show that he was improperly deprived of judicial review under § 1326(d)(2). To finish, the United States posits that Defendant simply cannot establish that the removal order was fundamentally unfair—as required by § 1326(d)(3)—because of Defendant's felony conviction under Iowa's drug tax stamp law, Iowa Code Ann. §§ 453B.1(3) & 453B.12. According to the United States, this felony could have properly served as an independent basis for removal under either 8 U.S.C. §§

1227(a)(2)(B)(i) (violation relating to a controlled substance) or 1227(a)(2)(A)(iii) (aggravated felony conviction).

The Court held an evidentiary hearing on September 16, 2019. *See* ECFs 33, 35, 36. At the hearing, the parties stipulated to the admission into evidence of all documents that the parties had appended to their briefing. ECF 38, Evid. Hr'g 17:1-3. The Court also allowed, over the Government's objection, the testimony of immigration attorney Orlando Mondragon and Defendant himself. *Id.* 17:9-16. Among other thing, Mr. Mondragon's testimony focused on whether Iowa Code Ann. §§ 453B.1(3) & 453B.12 would have qualified Defendant for removal as well as whether Defendant would have been eligible for discretionary relief from removal. *Id.*, passim. Defendant's testimony concerned counsel's performance at the removal proceeding, the circumstances surrounding the underlying conviction, and his other arrests. *Id.* 43:19-65:6.

## II. FACTS

For purposes of the Motion, and as a result of the parties' stipulation at the evidentiary hearing, the Court accepts as uncontested the facts shown by the parties' exhibits.

In May 1998, Defendant was arrested in Iowa and charged in state court with two felonies: (1) knowingly possessing marijuana with the intent to deliver, in violation of Iowa Code Ann. § 124.401(1)(d) (1997) and (2) knowingly possessing marijuana weighing more that 42.5 grams with the intent to deliver, without affixing the appropriate tax stamp, in violation of Iowa Code Ann. §§ 453B.1(3) & 453B.12 (1997). Gov. Resp. Ex. A. Pursuant to a plea agreement, Defendant pled guilty to the tax stamp violation. *Id.* Ex. C. The possession with intent to deliver charge was

ultimately dismissed pursuant to the plea agreement when the appeal time expired for Defendant's conviction on Count II. *Id.*[2]

On March 15, 1999, Defendant was detained by the former Immigration and Naturalization Service and personally served with a Notice to Appear ("NTA"). Def.'s Mot. Ex. A (Affidavit of Defendant); Gov. Resp. Ex. D (Notice to Appear). The NTA alleged that Defendant was subject to removal because he was convicted of "Possession of a Controlled Substance with the Intent to Deliver, to wit: Marijuana, in violation of Code of Iowa, Section 453.B.1(3) and 453B.12, 1997." Resp. Ex. D. As pointed out by both parties, the NTA incorrectly listed the offense of conviction by labeling it with Count I's title ("Possession of a Controlled Substance with the Intent to Deliver") but citing to the statutory provisions for the drug tax stamp violation of Count II (Iowa Code Ann. §§ 453B.1(3) & 453B.12). *Compare* Resp. Ex. A *with* Resp. Ex. D.[3] The NTA also informed Defendant of his "right to appeal an adverse decision by the immigration judge." Resp. Ex. D at 2.

Defendant requested an immediate hearing, which was held before an Immigration Judge ("IJ") on April 20, 1999. Attorney Joseph Rey, Sr. represented Defendant at the hearing. Mot.

---

[2] Defendant was sentenced to five years imprisonment in Iowa's Division of Adult Corrections. Resp. Ex. C. This sentence, however, was ultimately suspended and Defendant was placed on two years of probation, which was transferred to the State of New Mexico. *Id.*

[3] Defendant premises his entire argument on his belief that the NTA incorrectly charged him with Count I, the dismissed possession charge. The Court, however, thinks it entirely likely that the NTA correctly charged a violation of Count II. To illustrate, Count I is defined as "knowingly possess[ing] a controlled substance, to wit: Marijuana, a Schedule I Controlled Substance with the intent to deliver." Resp. Ex. A. Count II, however, is defined as "knowingly possess[ing] a controlled substance, to wit: Marijuana, a Schedule I Controlled Substance with the intent to deliver, *without affixing the appropriate tax stamp, said substance weighing more than 42.5 grams*." *Id.* (emphasis added). The NTA charged Defendant with "Possession of a Controlled Substance with the Intent to Deliver, to wit: Marijuana, in violation of Code of Iowa, Section 453.B.1(3) and 453B.12, 1997." *Id.* Ex. D. But these cited statutory provisions are for the Count II tax stamp violation. And if the NTA indeed charged the Count II tax stamp violation—as demonstrated by the statutory provisions it correctly cites—then Defendant's ineffective assistance arguments, which are premised on a *Count I* violation, are flawed. Rather, the issue would be whether Count II qualified as an aggravated felony under § 1227(a)(2)(A)(iii) or any other provisions allowing removal. The Court addresses this issue in Section IV(A).

Ex. A; Resp. Exs. E (minutes of removal proceeding), F (Notice of Rights), G (Removal Proceeding Audio). Through counsel, Defendant admitted to the four allegations charged in the NTA. Resp. Ex. G, 1:17.[4] He also conceded removability for committing an aggravated felony in violation of 8 U.S.C. § 1227(a)(2)(A)(iii), and thereafter requested no relief. *Id*. at 1:24-1:29, 1:35-1:45. Defendant then confirmed that he "want[ed] to be removed from the United States to Mexico." *Id*. at 1:54. The IJ explained to Defendant that he would lose his resident status and be permanently barred from the United States. *Id*. Nonetheless, Defendant reaffirmed that he wanted to be removed, accepted the IJ's removal order, and, through counsel, waived his appeal right. *Id*. at 2:10-4:45. Defendant was removed the same day. *Id*. Ex. I.

Nearly twenty years later, on February 14, 2019, Homeland Security Investigations arrested Defendant in Las Cruces, New Mexico and charged him with illegal reentry after deportation in violation of § 1326(a). *See* ECF 1.

## III. LEGAL STANDARD

Conviction of a § 1326 illegal reentry offense generally requires that the government establish: "(1) that the alien 'has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding'; and (2) that the alien thereafter has 'enter[ed], attempt[ed] to enter, or is at any time found in, the United States.'" *United States v. Adame-Orozco*, 607 F.3d 647, 650–51 (10th Cir. 2010) (brackets in original) (quoting § 1326). In limited instances, a defendant who is prosecuted under § 1326 for illegal reentry may challenge in that criminal proceeding the validity of a prior removal order. 8 U.S.C. § 1326(d); *see United States v. Mendoza-Lopez*, 481 U.S. 828, 830-32 (1987).

---

[4] Specifically, Defendant conceded that he (1) is "not a citizen or national of the United States;" (2) is a "native of Mexico and a citizen of Mexico;" (3) was "admitted to the United States . . . [in] 1985 as an immigrant;" and (4) was convicted in 1998 of "Possession of a Controlled Substance . . . in violation of Code of Iowa, Sections 453.1(3)(b) and 453B.12, 1997." Mot. Ex. D at 3 (NTA).

To collaterally attack the previous removal order, an alien must show that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

§ 1326(d)(1)-(3).

"Because a final deportation order enjoys a presumption of regularity, once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the defendant-alien, and it is he who must prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *Adame-Orozco*, 607 F.3d at 651 (citing *United States v. Arevalo–Tavares*, 210 F.3d 1198, 1200 (10th Cir. 2000) (per curiam)); *United States v. Almanza-Vigil*, 912 F.3d 1310, 1316 (10th Cir. 2019) (upholding conviction based on defendant's failure to satisfy § 1326(d)(3) alone).

In reviewing a collateral attack on a previous removal order, the Court applies the law that existed at the time and place of Defendant's removal proceedings, though later judicial decisions, such as those involving "statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant." *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005).

## IV. ANALYSIS

As noted above, if Defendant fails to carry his burden on any one element of § 1326(d), the instant Motion must be denied. Therefore, in its discretion, the Court will begin its analysis with § 1326(d)(3), whether the entry of the removal order was fundamentally unfair, before turning to § 1326(d)(1), the exhaustion requirement. The Court will end its discussion by touching on Defendant's opportunity for judicial review under § 1326(d)(2).

## A. The Removal Order Was Not Fundamentally Unfair

Defendant maintains that if Mr. Rey had conducted a proper investigation prior to the removal proceeding, Defendant would not have been removed because he was not convicted of the underlying felony used as the basis for removability, making the removal order fundamentally unfair. Mot. 1-3. The United States disagrees. It submits that Count II, the drug tax stamp violation to which Defendant pled guilty, would have been substituted as the underlying charge in the NTA,[5] thus providing two independent and proper bases for removal. The Court agrees with the United States for the reasons that follow.

An alien "alleging that the entry of a previous removal order was fundamentally unfair [must] meet a reasonable-likelihood standard." *Almanza-Vigil*, 912 F.3d at 1323 (citing *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004)). This requires the alien to "establish a reasonable likelihood that, but for the complained-of error, he would have avoided removal." *Id.* (citing *Aguirre-Tello*, 353 F.3d at 1208); *see also United States v. Sandoval*, 390 F.3d 1294 (10th Cir. 2004) ("reasonable likelihood that, but for the errors complained of, he would not have been deported") (citation omitted). Therefore, assuming Defendant's removal order relied on the previously-dismissed Count I—and that the error was the product of ineffective assistance—the Court must consider whether, but for this error, there is a reasonable likelihood that Defendant would have avoided removal. Consequently, the Court must consider whether Count II, the offense to which both parties agree Defendant pled guilty, would nevertheless have resulted in his removal by qualifying as either (1) an aggravated felony under § 1227(a)(2)(A)(iii) or (2) a violation "relating to a controlled substance" under 8 U.S.C. § 1227(a)(2)(B)(i). If the answer to either question is yes, then Defendant cannot establish a reasonable likelihood that he would not

---

[5] An assertion supported by Defendant's own expert. *See* Evid. Hr'g 27:4-7 ("it would be charged under the section where it is an offense relating to a controlled substance").

have been deported. Because at the time of the removal proceeding at issue an aggravated felony would not have allowed for discretionary relief from removability, the Court, in its discretion, begins its analysis with that issue.

### 1. *Count II Does Not Qualify as an Offense Relating to Tax Evasion*

The United States asserts that Defendant's conviction under Iowa Code Ann. §§ 453B.1(3) & 453B.12—Iowa's drug tax stamp law—qualified him for removal as an aggravated felon under 8 U.S.C. § 1101(a)(43)(M)(ii) as an "offense that . . . is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(ii); *see* Resp. 12. Specifically, the United States argues that Iowa's law falls within § 7201's coverage, which makes it a crime for "[a]ny person [to] *willfully* attempt[] in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony." 26 U.S.C. § 7201 (emphasis added); *see* Resp. 12.[6] To resolve this issue, the Court must determine whether 8 U.S.C. § 1101(a)(43)(M)(ii) encompasses Iowa's drug tax stamp law.[7]

When comparing state law crimes to § 1101(a)(43)(M)(ii), courts employ a "circumstance-

---

[6] Even though Defendant's conviction was under state law, the Immigration and Nationality Act "applies to an offense . . . whether in violation of Federal or State" law. 8 U.S.C. § 1101(a)(43); s*ee Torres v. Lynch*, 136 S. Ct. 1619, 1626 (2016) ("The whole point of § 1101(a)(43)'s penultimate sentence is to make clear that a listed offense should lead to swift removal, no matter whether it violates federal, state, or foreign law").

[7] No court has specifically determined that a state law conviction can qualify as an "aggravated felony" conviction under 8 U.S.C. § 1101(a)(43)(M)(ii), i.e., an offense that is described in 26 U.S.C. § 7201. Rather, the Supreme Court held in *Torres*, 136 S. Ct. 1619, *passim*, that courts should set aside the federal jurisdictional element when comparing offenses under § 1101(a)(43). For example, the Court in *Torres* held that an alien's state law conviction of arson that did not contain an interstate commerce element was nonetheless an aggravated felony under § 1101(a)(43). *Id*. To distinguish between substantive and jurisdictional elements, the Court explained, "the substantive elements of a federal statute describe the evil Congress seeks to prevent; the jurisdictional element connects the law to one of Congress's enumerated powers, thus establishing legislative authority." *Id*. at 1629. Therefore, the Court will assume § 7201's reference to "any tax *imposed by this title*" is nothing more than a jurisdictional element, i.e., the congressional exercise of legislative authority (Internal Revenue Code) with the constitutional provision (here, the taxing power) that grants Congress that authority.

specific" approach. *Nijhawan v. Holder*, 557 U.S. 29, 38 (2009).[8]  This requires a court to categorically compare the generic elements of § 1101(a)(43)(M)(ii), i.e., a violation of 26 U.S.C. § 7201, to the generic elements of the state offense, and then look to the specific conviction to determine whether it meets the circumstance-specific elements found in § 1101(a)(43)(M)(ii), i.e., the revenue loss to the Government exceeds $10,000.[9]  "The categorical approach asks whether the state offense's definition matches "the 'generic' federal definition of a corresponding aggravated felony." *Almanza-Vigil*, 912 F.3d at 1317 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)).  For a categorical match, "the state offense fits the generic offense only if it "necessarily" includes the generic federal offense. *Id.* (quoting *Moncrieffe*, 569 U.S. at 190).  A court "presume[s] that the state conviction rested on the least of th[e] acts criminalized, then determine[s] whether the generic federal offense encompasses even those acts."  *Id.* at 190–91 (quoting *Moncrieffe*, 569 U.S. at 190-91).  If the state statute is broader than the federal counterpart there is no categorical match.  *See Descamps v. United States*, 570 U.S. 254, 257 (2013). Conversely, if the state statute criminalizes less activity (or the same amount of activity) than its federal analogue, then it is a categorical match and can be used as a predicate for removal.  *Id.*

Analyzed by the statute's generic elements, a violation of § 7201 requires "the existence of a tax deficiency, an affirmative act constituting an evasion or attempted evasion of the tax, and *willfulness*." *United States v. Boisseau*, 841 F.3d 1122, 1125 (10th Cir. 2016) (emphasis added)

---

[8] The Supreme Court specifically stated that "[s]ubparagraph (M)(ii) provides yet another example. It refers to an offense 'described in section 7201 of title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000' (emphasis added). There is no offense 'described in section 7201 of title 26' that has a specific loss amount as an element. Again, unless the 'revenue loss' language calls for circumstance-specific application, the tax-evasion provision would be pointless." *Id.*

[9] The Court takes this approach because, here, the underlying conviction was not pursuant to § 7201.  Accordingly, the Court must first determine whether the Iowa drug tax stamp law categorically (or under a modified approach) compares to § 7201 before it can answer the question of whether Defendant's conviction resulted in revenue loss to the government in excess of $10,000.

(citing *Sansone v. United States*, 380 U.S. 343, 351 (1965)). A violation of Iowa's drug tax stamp law, on the other hand, requires that "(1) the defendant is a dealer, (2) *who unlawfully possesses, distributes or offers to sell*, (3) [marijuana], (4) without affixing a stamp, label, or other official indicia evidencing the tax imposed by chapter 453B has been paid." *State v. White*, 545 N.W.2d 552, 555 (Iowa 1996) (emphasis added) (citing *State v. Gallup*, 500 N.W.2d 437, 442 (Iowa 1993)).[10] In turn, to establish the second element of Iowa's drug tax stamp law, it must be shown "that the defendant knowingly or intentionally possessed a controlled substance, and that the defendant knew the substance he or she possessed was a controlled substance." *State v. Franzen*, 495 N.W.2d 714, 717 (Iowa 1993) (discussing whether defendant's guilty plea of an offense in violation of Iowa Code Ann. § 204.401, now § 124.401, would constitutionally bar prosecution of a drug tax stamp violation).

The generic elements of the two statutes demonstrate that there is a clear categorical mismatch. To be sure, the Iowa drug tax stamp act provision requires no specific intent to evade a tax. In contrast, § 7201 requires a *willful* evasion or attempted evasion of a tax, i.e., voluntary, intentional evasion of a tax. *See United States v. Yurek*, 925 F.3d 423, 433 (10th Cir. 2019) ("To satisfy the willfulness requirement, the government had to prove a specific intent to evade taxes.") (citing *United States v. Payne*, 978 F.2d 1177, 1182 (10th Cir. 1992)). The only mental state present in Iowa's drug tax stamp law applies to the possession of controlled a substance. *See Franzen*, 495 N.W.2d at 717 (the State must prove that the defendant "knowingly or intentionally possessed a controlled substance, and that the defendant knew the substance he or she possessed was a controlled substance"). A finding that a defendant willfully failed to affix a drug tax stamp is not required. In that sense, Iowa's statute—once a defendant knowingly and intentionally

---

[10] *See also* Iowa State Bar Association Model Criminal Jury Instruction 2310.1 (Updated June 2019).

10

possesses a controlled substance and knows that the substance possessed is a controlled substance—sweeps broader than § 7201. *See White,* 545 N.W.2d at 556 (stating rules provide "the tax stamps must be affixed instantly" and that "it is not impossible to comply with the statute if it is interpreted to require that the tax stamps be affixed at the very time of acquisition"); *see also State v. Breeding*, 928 N.W.2d 686 (Iowa Ct. App. 2019) (same). Thus, applying the categorical approach, Iowa's drug tax stamp violation does not qualify as an aggravated felony under § 1101(a)(43)(M)(ii).

Nevertheless, in some instances the fact that a categorical infirmity exists does not end a court's inquiry. Specifically, courts have appropriately used a "modified categorical approach" when a state statute is divisible, i.e., when it "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257.[11] This modified categorical approach "compare[s] the elements of the crime of conviction (*including the alternative element used in the case*) with the elements of the generic crime." *Id.* (emphasis added). With this basic understanding, it is clear that, even assuming Iowa's statute is divisible, the result remains unchanged. To illustrate, the modified approach allows the substitution of an element that is alternatively listed to eliminate the state statute's overbreadth of coverage. Here, Iowa's stamp act does not list mental states in the alternative or even require a mental state in relation to the tax stamp element. Without a possible mental state that can be substituted in the alternative as a predicate to failing to affix a tax stamp, Iowa's law will always cover more conduct than § 7201's narrow *willfulness* requirement does. And because neither approach results in a match, the Court need not undertake a circumstance-specific analysis to determine whether the amount of loss to the government exceeded $10,000.

---

[11] "If, however, rather than creating distinct offenses for each alternative element, the statute merely lists alternative means of committing a single element, it is not divisible." *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

Accordingly, the Court rejects the United States' assertion that 8 U.S.C. § 1101(a)(43)(M)(ii) would have qualified Defendant for removal.

2. *Count II Subjected Defendant to Removal as a Violation Relating to a Controlled Substance*

The Court now shifts its focus to whether a violation of Iowa's drug tax stamp law provided a separate basis for removal as a law "relating to a controlled substance" under § 1227(a)(2)(B)(i).[12] As of March 15, 1999, the date on which Defendant was detained by INS and served with his NTA, § 1227(a)(2)(B)(i) read:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) *any law or regulation of a State, the United States, or a foreign country relating to a controlled substance* (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

(emphasis added). In Iowa, "a dealer distributing, offering to sell, or possessing taxable substances without affixing the appropriate stamps, labels, or other official indicia [was] guilty of a class "D" felony." Iowa Code Ann. § 453B.12. A "taxable substance" included "a controlled substance, a counterfeit substance, a simulated controlled substance, or marijuana, or a mixture of materials that contains a controlled substance, counterfeit substance, simulated controlled substance, or marijuana." § 453B.1. In turn, the statute defined a "controlled substance," "counterfeit substance," and "simulated controlled substance" by reference to Iowa's Controlled Substances Act, Iowa Code Ann. § 124.10 ("CSA"). Iowa's CSA defined a controlled substance by

---

[12] In Defendant's affidavit, he asserts that Count II was a crime involving moral turpitude which would require two convictions for him to become deportable. *See* Mot. Ex. A. The affidavit by Orlando Mondragon makes the same assertion. *See Id.* Ex. B ("The government could have attempted to allege that the tax stamp violation was a crime involving moral turpitude. However, under INA § 237(a)(2)(A)(ii) they would need two crimes involving moral turpitude"). That contention is a red herring because the United States does not contend that Defendant was removable for having committed a crime of moral turpitude. Furthermore, the affidavits do not address the issue of whether Defendant was separately removable for being convicted of a felony "relating to a controlled substance."

incorporating the state's drug "schedules I through V." § 124.10(5). At the time of Defendant's

conviction and removal, a counterfeit substance

> Mean[t] a *controlled substance* which, or the container or labeling of which,
> without authorization, bears the trademark, trade name, or other identifying mark,
> imprint, number or device, or any likeness thereof, of a manufacturer, distributor,
> or dispenser other than the person who in fact manufactured, distributed, or
> dispensed the substance.

§ 124.10(6) (emphasis added). A simulated controlled substance

> Mean[t] a substance which is not a controlled substance but which *is expressly
> represented to be a controlled substance*, or a substance which is not a controlled
> substance but which is impliedly represented to be a controlled substance and which
> because of its nature, packaging, or appearance would lead a reasonable person to
> believe it to be a controlled substance.

§ 124.10(27) (emphasis added).

As with the analysis in Section IV.A.1., *supra*, "[t]o determine whether violation of a state

law 'relate[s] to a controlled substance (as defined in section 802 of Title 21),'" courts apply the

categorical approach. *Arellano v. Barr*, No. 17-9544, 2019 WL 3990987, at *2 (10th Cir. 2019)

(unpublished) (citing *Mellouli v. Lynch*, 135 S. Ct. 1980, 1984, 1987, 192 (2015) (applying

categorical approach to § 1227(a)(2)(B)(i))); *see also Guillen v. U.S. Attorney Gen.*, 910 F.3d 1174,

1180 (11th Cir. 2018) (same). However, because "several circuit courts have held that state

statutes *relating to controlled substances are divisible*, even when the list of controlled substances

is found in the state's drug schedules and not in the statute of conviction," the Court will apply the

modified categorical approach. *Carcamo v. Lynch*, 648 Fed. App'x 306, 311 (4th Cir. 2016)

(unpublished) (emphasis added) (citing *United States v. Gomez–Alvarez*, 781 F.3d 787, 792, 796

(5th Cir. 2015); *Coronado v. Holder*, 759 F.3d 977, 984–85 (9th Cir. 2014); *Ruiz–Giel v. Holder*,

576 Fed. App'x 738, 743–44 (10th Cir. 2014) (unpublished); *see also Arellano*, 2019 WL 3990987,

at *2. Consequently, the Court will first determine whether Iowa's drug tax stamp law is divisible

and then whether, under the modified categorical approach, it categorically matches §

1227(a)(2)(B)(i).[13]

### a) *Iowa's Drug Tax Stamp Law Is Divisible*

For the modified categorical approach to apply, the state statute must be divisible.

*Descamps*, 570 U.S. at 257. A divisible statute contains "multiple, alternative elements." *Id.* An

element is not simply "a particular set of facts" through which the crime may be committed, rather

it is an essential fact that the jury must find "beyond a reasonable doubt." *Id.* at 272; *see also*

*Mathis*, 136 S. Ct. at 2248.[14] The Supreme Court identified three ways to determine whether an

alternatively phrased criminal law lists elements or means. *See United States v. Titties*, 852 F.3d

---

[13] In Reply to the Government's assertion that the drug tax stamp violation qualified as a felony "relating to a controlled substance," Defendant simply stated that the "decision cited by counsel from the [Eighth] Circuit was issued in 2009. In 1999 there was no authority for the proposition that this could be classified as a non aggravated [sic] felony drug offense." Reply at 4. Further, at the evidentiary hearing when the Court asked Defendant's counsel whether he concedes that the drug tax stamp violation was "related to a controlled substance," he merely stated that "for the purposes of this hearing, based on what Mr. Mondragon has testified to, I cannot concede that only because I'd have to look at this *Mellouli*" case. Evid. Hr'g 65:13-16. Generally, the "[f]ailure to respond to an argument is [] deemed an acquiescence." *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 622 n. 5 (D.N.M. 2007). Moreover, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) (citation omitted). As the First Circuit has noted, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 493 (1st Cir. 2016). Here, defense counsel failed to even put forth an argument as to why the drug tax stamp felony would not have qualified as a crime "relating to a controlled substance." Even more concerning is that when collaterally attacking a removal proceeding under § 1326(d), a defendant bears the burden of proof. In light of Defendant's failure to meaningfully respond to the Government's argument, and his failure to develop his opposition in anything but the most skeletal sense, the Court recommends that Defendant be deemed to have waived any objection to the conclusion that his drug stamp tax felony was one "relating to a controlled substance."

[14] To illustrate, the Supreme Court provided the following hypothetical:

> suppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors "conclude[d] that the defendant used a knife" while others "conclude[d] he used a gun," so long as all agreed that the defendant used a "deadly weapon."

*Mathis*, 136 S. Ct. at 2249 (internal citations omitted).

1257, 1267 (10th Cir. 2017) (citing *Mathi*s, 136 S. Ct. at 2248). First, the statute on its face can provide the answer if, for example, it carries different punishments or it "identif[ies] which things must be charged (and so are elements) and which need not be (and so are means)." *Mathis*, 136 S.Ct. at 2256; *see United States v Titties*, 852 F.3d at 1267. Additionally, a state court decision can answer the question: "When a ruling of that kind exists, a sentencing judge need only follow what it says." *Id*. Lastly, "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself . . . by peek[ing] at the [record] documents [] for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." *Id*. (internal quotation and citation omitted).

Beginning with the text, the Court concludes that the statute on its face fails to provide a clear answer on divisibility. The statute uses an overarching umbrella term (taxable substance)[15] that expands into three sub-terms and a named substance, i.e., a taxable substance means a controlled substance, a counterfeit substance, a simulated controlled substance, or marijuana, and then defines those sub terms by reference to Iowa's CSA. In defining the term "controlled substance," Iowa's CSA incorporates a lengthy list of drug schedules that are provided in yet another section of the title. The CSA also includes lengthy definitions for "counterfeit substance" and "simulated controlled substance." This statutory construction provides little guidance about whether the listed substances in Iowa's drug schedules that define "controlled substance" or the additional defined terms "counterfeit substance" and "substitute controlled substance" are elements, which must be proved beyond a reasonable doubt, or just merely a means to satisfy a singular "taxable substance" element.

---

[15] The inclusion of an umbrella term is one factor courts consider in the means rather than elements analysis. *See United States v. Hamilton*, 889 F.3d 688, 696 (10th Cir. 2018) (noting that, while discussing an Oklahoma burglary statute, "the use of an umbrella term could indicate that the locational alternatives constitute means rather than elements").

Iowa's state law provides better guidance. On numerous occasions, defendants in Iowa have been convicted of multiple drug tax stamp violations premised on separate substances. *See State v. Reed*, 618 N.W.2d 327 (Iowa 2000) (affirming two counts of failing to affix a tax stamp for marijuana and cocaine); *State v. Harris*, 829 N.W.2d 191 (Iowa Ct. App. 2013) (defendant convicted of two drug tax stamp violations, to wit: crack cocaine and marijuana, successfully overturned crack cocaine drug tax stamp violation due to insufficient evidence); *See State v. Peterson*, 697 N.W.2d 128 (Iowa Ct. App. 2005) (among other things, affirming two counts of failure to affix a drug tax stamp, to wit: marijuana and cocaine); *State v. Young*, 662 N.W.2d 373 (Iowa Ct. App. 2003) (affirming convictions of possession of cocaine with intent to deliver while in possession of a firearm, possession of marijuana and failure to affix drug tax stamps).

Furthermore, possession of a controlled substance, delivery of a controlled substance, or manufacture of a controlled substance may be lesser included offenses of the drug stamp tax offense. *See State v. Gallup*, 500 N.W.2d 437 (Iowa 1993); *State v. Franzen*, 495 N.W.2d 714 (Iowa 1993); *State v. Lange*, 495 N.W.2d 105 (Iowa 1992); Iowa Criminal Jury Instructions 2300.1, 2300.3. And without a jury's finding that a defendant committed the lesser included offense of possession, deliver, or manufacture of a *specific* controlled substance, the drug tax stamp offense cannot be committed. *See Gallup*, 500 N.W.2d at 442 (holding that lesser included offense of delivery did not violate double jeopardy).

In addition to case law, Iowa's pattern jury instructions help resolve the issue. *See Mathis*, 136 S. Ct. 2243, 2256 (2016) (jury instructions are "authoritative sources of state law"); *see also Hamilton*, 889 F.3d at 693 (10th Cir. 2018) (looking to state law and jury instructions for guidance on issue of divisibility) (*citing United States v. Titties*, 852 F.3d 1257, 1270 (10th Cir. 2017) ("Oklahoma's Uniform Jury Instructions provide an additional source of state law guidance" to

distinguish between means and elements); *De Leon v. Lynch*, 808 F.3d 1224, 1231 n.9 (10th Cir. 2015) ("[T]he uniform jury instructions have often guided both the [Oklahoma Court of Criminal Appeals] and our court in defining the bounds of Oklahoma criminal law.")). Iowa's pattern instruction, composed by the Iowa State Bar Association, includes the following charge:

> 1. On or about the day of _____ the defendant knowingly [possessed] [distributed] [offered to sell] a taxable substance as defined in Instruction No. ___.
> 2. Defendant [[shipped] [transported] [imported] into this State]] [[acquired] [purchased] [possessed] [manufactured] [produced] in this State]]:
>     a. Seven or more grams of [a taxable substance, (*name of substance*)]; [a mixture of marijuana and other taxable substance(s), (*name(s) of substance(s)*)].
>     b. Forty-two and one-half grams or more of a substance consisting of or containing marijuana.
>     c. One or more unprocessed marijuana plants.
>     d. Ten or more dosage units of a taxable substance not sold by weight.
> 3. The taxable substance that defendant [possessed] [distributed] [offered to sell] did not have permanently affixed to it a stamp, label or other official indication of payment of the state tax imposed on the substance.
>
> If the State has proved each of these elements, the defendant is guilty of violating the Iowa Drug Stamp Tax law. If the State has failed to prove one or more of the elements, the defendant is not guilty (and you will then consider the charge of _____, as explained in Instruction No. ____).

Iowa State Bar Association Model Criminal Jury Instruction 2310.1 (emphasis added) (updated June 2019). The model criminal instructions define "taxable substance" as a "controlled substance, a counterfeit substance, a simulated controlled substance, or marijuana, or a mixture of materials that contains a controlled substance, counterfeit substance, simulated controlled substance or marijuana. _____ is a [counterfeit] [simulated] controlled substance." *Id.*, Instruction 2310.2. The instruction notes, however, that "if there is a fact issue whether the substance involved is a controlled substance, simulated controlled substance or marijuana, the appropriate definition in [Iowa's CSA] should be used in place of the second paragraph." *Id.*

These two instructions, together with the supplemental note, demonstrate that a jury must make a factual finding as to the identity of the specific substance before it can determine whether

that substance lacked the appropriate tax stamp.  Moreover, the *inclusion of a specific substance* in the charge to the exclusion of all other possible substances, indicates that Iowa's statute lists separate elements in the alternative.  *See Mathis*, 136 S. Ct. at 2257 ("jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime").

Lastly, the record further confirms the statute's divisibility.  The criminal information charged defendant with "knowing[ly] possess[ing] a controlled substance, to wit: *Marijuana*, a schedule I Controlled Substance with the intent to deliver, without affixing the appropriate tax stamp, said substance weighing more than 42.5 grams."  Resp. Ex. A (emphasis added).  Rather than charging Defendant for failing to affix a stamp to a taxable substance, the information identified a specific controlled substance.  Thus, on the basis of state law precedent and the record, the Court concludes the statute is divisible.

### b) Iowa's Drug Tax Stamp Law "Relates to a Controlled Substance"

Because Iowa Code Ann. § 453B.12 is divisible, the Court applies the modified categorical approach.  This task requires the Court to determine whether the crime of conviction, and not the generic elements of the state statute, categorically match § 1227(a)(2)(B)(i), i.e. the conviction relates to a controlled substance as defined in § 802.  Defendant was charged by information and ultimately pled guilty to "knowing[ly] possess[ing] a controlled substance, to wit: *Marijuana*, a schedule I Controlled Substance with the intent to deliver, without affixing the appropriate tax stamp, said substance weighing more than 42.5 grams."  Resp. Exs. A (emphasis added); *see also* Exs. B, C.  At the time of Defendant's removal, 21 U.S.C. § 802 defined "controlled substance" by reference to the federal drug schedules located in § 812.  In 1999 and as of the writing of this recommendation, marijuana was and remains a schedule I controlled substance.  *See* 21 U.S.C. §

812; *see also* 21 C.F.R. § 1300 *et seq.* Accordingly, Defendant's conviction for a violation of Iowa Code Ann. § 453B.12 is a categorical match.[16]

### c) Defendant Would Not Have Been Granted Discretionary Relief From Removal

Unlike an aggravated felony conviction pursuant to § 1227(a)(2)(A)(iii), a conviction under § 1227(a)(2)(B)(i) would have not foreclosed Defendant from seeking discretionary relief. *See* Evid. Hr'g 40:1-5. Section 1229b of Title 8, United States Code, granted the Attorney General the discretion to cancel removal if an alien "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b (1999).

If the alien established the first three elements, an immigration court was required to "balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented in his (or her) behalf to determine whether the granting of . . . relief appears in the best interest of this country." *Matter of C-V-T-*, 22 I. & N. Dec. 7, 11 (BIA 1998) (finding that the "general standard [under Section 212(c)] is equally appropriate in considering requests for cancellation of removal under section 240A(a) of the Act."); *see also* Evid. Hr'g 40:6-12 (Testimony of Orlando Mondragon) (presiding immigration judge decides whether to grant discretionary relief). Favorable considerations include:

> family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine

---

[16] The conclusion that Iowa's drug tax stamp act relates to a controlled substance is consistent with Iowa and Eighth Circuit case law. *See United States v. Coleman*, 556 F.3d 851 (8th Cir. 2009) (Iowa drug stamp law relates to marijuana); *see also State v. Owens*, 635 N.W.2d 478, 486 (Iowa 2001) ("Iowa Code section 453B.12 is 'any state or federal statute relating to narcotic drugs'").

rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*Id*. Negative equities include:

the nature and underlying circumstances of the grounds of exclusion or deportation (now removal) that are at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.

*Id*. Defendant's expert further elaborated on this process:

For cancellation cases, they can look anything. They can look at charging documents, complaints, they will hear from the witness, from the, they call them respondent. They will hear from his family members, and any documentation he can provide with rehabilitation. If it's an individual there for DWI's, you try to show DWI classes. Domestic violence, show that he completed domestic violence classes. You try to show rehabilitation . . . family ties, length of history, he had been in the U.S., work history, and community service to the, community service on his own, not Court ordered. And any other documents that put him in a good light.

Evid. Hr'g 29:6-23.

Apart from the United States' contention that Defendant's tax stamp felony was an aggravated felony as an offense relating to tax evasion, the parties do not dispute that Defendant met the threshold requirements of § 1229b(a)(1)-(3).[17] Apart from these requirements, however, Defendant merely argues that "having a [United States Citizen] wife and children and no other convictions" would have persuaded the immigration judge to cancel removal. Reply at 4. The Government contends that Defendant's criminal history and the circumstances surrounding the drug tax stamp conviction combine to demonstrate that it was more likely that discretionary relief would be denied and Defendant's removal ordered. Resp. at 12. The Court agrees with the Government on this point.

---

[17] Neither party contests these residency requirements. But the Court notes that Defendant may very well have not met them. *See* 47:12-15 ("Mr. Ortiz: And what year did you become a legal permanent resident, if you recall? In 1985? Defendant: I believe it was, 1994, 1995. 1995, 1995.").

To be sure, Defendant's arrest for possessing approximately forty-eight pounds of marijuana initiated the Iowa felony charges. Resp. Ex. B (1999 Criminal Complaint). While it is true that the possession charge was ultimately dismissed as the result of a plea bargain (and when the appeal time for Count 2 expired), it appears highly probable that, but for the plea agreement, Defendant would have been convicted of that offense at trial. *Id*.; *see* Evid. Hr'g 63:6-9 (The Court: "So it was a big surprise to you when you got to Iowa and you realized that he was in possession of 49 pounds of marijuana." Defendant: "I knew that that was the -- he was on his way there, but I didn't know how much it was." The Court: "So you knew he was taking marijuana, you just did not know how much it weighed." Defendant: "Yes, I was only going there as a -- as company."); *see also* Resp. Ex. B. And this was not the only instance in which Defendant had adverse encounters with law enforcement. His record included separate arrests in 1993 for possession of a stolen vehicle and for DUI, Evid. Hr'g 41:4-14; 49:19-24; 50:2-6, and in 1994 for assault and battery and domestic violence. *Id*. at 63:10-22. Unfortunately for Defendant, all of this conduct would properly have been considered in deciding whether to grant discretionary relief. *See Matter of Thomas*, 21 I. & N. Dec. 20, 23 (BIA 1995) (citing *Parcham v. I.N.S.*, 769 F.2d 1001 (4th Cir. 1985) (finding no error in BIA's reliance of pending charge without conviction in denying application for voluntary departure)); *see also Avila-Ramirez v. Holder*, 764 F.3d 717, 723-24 (7th Cir. 2014) (discussing cases where the consideration of criminal conduct without conviction was appropriate).[18]

Moreover, the Court specifically finds that Defendant's testimony about his prior assault and battery and domestic abuse arrests as well as the circumstances surrounding the Iowa drug

---

[18] Mr. Mondragon also testified that, when considering whether to grant discretionary relief, an Immigration judge may consider everything, including uncharged conduct, arrests, and the facts underlying them. Evid. Hr'g 40:13-21; 43:15-21.

charges was not credible. It was obvious to the Court sitting as the factfinder that Defendant was minimizing the seriousness of the conduct for which he was charged and his involvement in them. For example, Defendant stated that the domestic violence case was "just a misunderstanding" and that "nothing happened" but then admitted under questioning by the Court that he was arrested and taken to jail. *Compare* Evid. Hr'g 51:16-52:2 with *id*. at 63:10-21. As another example, Defendant first claimed that he did not know that marijuana was being transported to Iowa and then later admitted to having knowledge of that fact. *Compare id.* at 62:23-24 (The Court: "Did you know he was transporting the marijuana?" Defendant: "No, I did not know that.") with *id*. at 63:6-9 (The Court: "So it was a big surprise to you when you got to Iowa and you realized that he was in possession of 49 pounds of marijuana." Defendant: "I knew that that was the -- he was on his way there, but I didn't know how much it was." The Court: "So you knew he was taking marijuana, you just did not know how much it weighed." Defendant: "Yes, I was only going there as a -- as company."). If the immigration judge in 1999 had assessed Defendant's credibility the way this Court did in 2019, the award of discretionary relief would have been all the more remote. Evincing a lack of candor with a tribunal—particularly when the mendacity involves minimizing one's own involvement in prior criminal activity—is an equity decidedly not in an alien's favor.

On balance, Defendant's proffered equities, that he resided in the country for fifteen years prior to conviction, that he had a wife and children who were United States citizens, and that he had no other convictions, were unlikely to have tipped the scale in favor of cancellation of removal. Indeed, while Defendant does not have to prove he *would have been* granted relief, he nonetheless must establish that it was *probable* that relief would be granted. As the foregoing shows, Defendant has failed to meet that burden. The negative equities identified by the Court were numerous and weighty enough to overcome the relatively sparse array of positive equities.

Thus, assuming Defendant's deportation order was erroneously based on Count I, and that he was "improperly deprived . . . of the opportunity for judicial review" when his counsel failed to object to such an error, this Court holds nevertheless that the deportation order was not fundamentally unfair because—even without such an error—Defendant would have been deported under Count II. Therefore, the Court recommends Defendant's Motion be denied on this basis.

## B. Exhaustion and Opportunity for Judicial Review

Because the Court has determined that the previous removal order was not fundamentally unfair "our inquiry ends there—we can [recommend] the dismissal of [Defendant's] collateral attack without reaching § 1326(d)'s other conditions." *Almanza-Vigil*, 912 F.3d at 1316. But for the sake of thoroughness, this Court nevertheless addresses § 1326(d)'s remaining two conditions.

Defendant alleges that "[h]is administrative remedies were closed off" when he, at the direction of counsel, admitted to the aggravated felony conviction of distribution of marijuana and conceded removal. Mot. 4. The Government contends that Defendant's waiver of his right to appeal precludes him from establishing that he exhausted his administrative remedies. Resp. 5. In addition, the Government argues that Defendant's failure to appeal his ineffective assistance claim to the Bureau of Immigration Appeals ("BIA") and his failure to move to reopen his immigration proceedings in order to assert a claim of ineffective assistance bar him from establishing exhaustion. *Id.*

In the Tenth Circuit, "an alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) (citing *United States v. Esparza-Aguilar*, 97 F. App'x 895 (10th Cir. 2004) (unpublished)). Similarly, "[n]eglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to *any issue* that could

have been raised." *Id*. (emphasis added) (quoting *Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007)).

As an initial matter, it is undisputed that Defendant waived his right to appeal, and under normal circumstances, this would terminate the inquiry. *See Chavez-Alonso*, 431 F.3d at 728; *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012) (rejecting futility exception to exhaustion requirement). But under normal circumstances, counsel would not have failed to realize that the predicate felony on which removal was based was not one of which his client had been convicted. Nor would counsel normally have procured a waiver of an alien's appellate right in such a circumstance. Therefore, the Court must determine whether counsel's deficiencies excused Defendant's non-compliance with the exhaustion requirement of § 1326(d)(1). Unfortunately, the Tenth Circuit has yet to answer this question. As noted above, current law requires a defendant to "knowingly waive" the right to appeal. And the Tenth Circuit takes a strict approach regarding challenges to appeal waivers. *See United States v. Melendez*, 642 F. App'x 859, 863 (10th Cir. 2016) (unpublished) (finding defendant failed to exhaust because no constitutional right to be informed of eligibility for discretionary relief even when misled by judge); *see also Chavez-Alonso*, 431 F.3d at 728 (same).

When faced with claims of ineffective assistance, however, other circuits have excused a defendant's failure to exhaust. *See, e.g., United States v. Cerna*, 603 F.3d 32, 42 (2d Cir. 2010) ("ineffective assistance of counsel can be grounds for excusing the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1)"); *United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014) ("Just as it rendered the proceeding fundamentally unfair, counsel's ineffectiveness also caused [defendant's] failure to exhaust administrative remedies and deprived him of his

opportunity for judicial review."); *see also United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1131 n.9 (9th Cir. 2013) (discussing situations were aliens can satisfy § 1326(d)(1) & (d)(2)).

But none of these cases discuss whether a defendant-alien could (and should) have appealed, *pro se*, his counsel's ineffectiveness to the BIA. *See e.g.*, *In Re: Leroy Chambers*, 2007 WL 2588591, at *1 (BIA Aug. 8, 2007) (unpublished). Nor do they address his ability to reopen immigration proceedings, *see* 8 U.S.C. § 1229a(c)(7), to assert that claim.[19] *See In re Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988) (setting out requirements to bring ineffective assistance claim in immigration proceedings); *see also Lopez v. Whitaker*, 761 F. App'x 790, 792 (10th Cir. 2019) (unpublished) (applying *Lozada* in reviewing BIA's denial of motion to reopen on basis of ineffective assistance of counsel).

Here, the relevant facts are as follows: (1) the NTA informed Defendant of his right to appeal, *see* Resp. Ex. D; (2) Defendant's counsel failed to notice that Count I had been dismissed, Mot. 3-5; (3) Defendant's counsel directed him to admit that charge anyway, concede removal, waive his appeal right, and informed the immigration judge that Defendant did not seek any relief, *Id*. Ex. A; (4) the judge then reaffirmed Defendant's desire to be removed, Resp. Ex. G 2:10-4:17; (5) the judge also informed Defendant that his counsel had a reputation for misinforming clients, *Id*. at 3:45-3:50; and (6) Defendant failed to file a *pro se* appeal with the BIA arguing ineffective assistance nor did he move to reopen the proceedings to argue the same.[20]

---

[19] In *Mendiola v. Holder*, 576 F. App'x 828 (10th Cir. 2014) (unpublished), the Tenth Circuit determined that an ineffective assistance claim granted it jurisdiction to *review the Board of Immigration Appeals'* finding that an alien was not prejudiced by his immigration attorney's alleged ineffectiveness, and in refusing to toll 90-day time limit on motions to reopen based on that alleged ineffectiveness. The Court also notes that eleven months prior to the removal proceeding, Charge 1 was dismissed. One would think, in fact, if Defendant was present during the plea process (obviously he was), he should have been acutely aware that he had mistakenly conceded a charge that had been dismissed against him and therefore should have immediately moved to reopen the proceeding.

[20] Defendant's immigration counsel is deceased, which obviously forecloses the parties' ability to ascertain what if anything he remembers about this case.

This is a close and difficult question and these facts certainly present strong arguments for both sides. On balance, this Court is inclined to find that Mr. Rey acted unreasonably in failing to detect the obvious—that his client was not convicted of an aggravated felony. But an attorney's unreasonableness is only the first prong of the *Strickland* test, and it remains Defendant's burden to establish that, but for Mr. Rey's unreasonableness, the outcome of the proceeding would likely have been different. Unfortunately for Defendant, as established in Section IV(A)(1) above, he cannot carry his burden of demonstrating that it was probable he would have been granted discretionary relief and a cancellation of his removal. In this Court's view, Mr. Rey's ineffective assistance amounts to nothing more than harmless error.

Lastly, Defendant argues that, when Mr. Rey erroneously advised him to admit the charges in the NTA and concede removal, he was deprived of judicial review because Count I was classified as an aggravated felony, thus making him ineligible for discretionary relief. Mot. 5. The Government maintains that Defendant has improperly asserted an argument under § 1326(d)(3) because he failed to articulate how the alleged defect in the NTA—erroneously listing Count I— foreclosed any opportunity for judicial review. Resp. 9-10. The Government further contends that Defendant cannot establish this prong because the NTA notified Defendant of his right to appeal and he thereafter waived it. *Id.* at 10.

Section 1326(d)(2) "provides that an alien prosecuted for illegal reentry 'may not challenge the validity of the deportation order' unless the alien demonstrates that 'the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review.'" *Adame-Orozco*, 607 F.3d at 652 (quoting 8 U.S.C. § 1326(d)). Two limitations exist, however. "First, the defendant may attack the prior deportation only by reference to the 'proceedings at which the order was issued.' Second, the defendant must limit this attack to the

argument that those proceedings deprived him of judicial review of the deportation order itself."

*Id*. "Where the defendant has failed to identify any obstacle that prevented him from obtaining judicial review of a deportation order, he is not entitled to such review as part of a collateral attack under 8 U.S.C. § 1326(d)." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1132–33 (9th Cir. 2013) (citing *United States v. Adame–Orozco*, 607 F.3d 647, 652 (10th Cir. 2010)).

While Defendant certainly does identify an obstacle that prevented him from judicial review, i.e., counsel's performance at the removal proceeding, as stated in Section IV(A)(1) above, the Court need not reach a conclusion on this element because he cannot establish that his removal was fundamentally unfair.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be **DENIED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**